Good afternoon. This is the 1st District Appellate Court, 1st Division, in the case of Parker v. Symphony of Evanston Healthcare, 2023 ILAP v. 220391. I'm Terrence Lavin, presiding today along with my colleagues Aurelia Puchinski, who's a voice in that video, and then my colleague, Justice Mary Ellen Coghlan. We've read the record and the brief, so I'm quite familiar with the issues, and we're looking for about 15 minutes apiece. The appellant should save some time for rebuttal, so Mr. Rassak, why don't we start with you? Thank you. Good afternoon, Your Honors. Michael Rassak. I'm here on behalf of the Mae Jefferson, a resident in the nursing home, suffered some injuries, passed away. Her estate filed a lawsuit. The trial court granted the motion to send the survival counts to arbitration pursuant to an agreement, separate arbitration agreement in the case. Our first point, and one that's dispositive, is the question of whether or not Cheryl, or whether or not the person who Cathy, had only a health care power of attorney. A health care power of attorney only gives you a right to sign a document that has to do with health care. In this case, because the residency contract and the arbitration agreement, a separate contract, specifically provided that it was not necessary to agree to arbitration as a prerequisite to being admitted as a resident, it was not a health care decision. And because it was not a health care decision, the Fiala case and the federal district court in Testa said, the person's not authorized to do it. The person's not authorized to do it. The agreement's not valid. That's, it's a relatively simple, clear issue that our second point is the question of whether or not the arbitration agreement was valid because the agreement so limited the rights of the resident to the extent that there was really no, there simply was no mutuality of consideration here. And the key point there is the fact that the the right to attorney's fees under the nursing home of care act. And that is a statutory right. The Supreme court has said that when you, when you have a statutory right, you really should not be allowed to bargain in a way. And going back on that, maybe the best source for that, that statement is the Romano case we cited from Florida, which in turn cited a U.S. Supreme court case. We know the U.S. Supreme court has been aggressive in forcing matters to arbitration, but even it said you can't be forced to arbitration unless somebody is, unless the courts are willing to guarantee that a statutory right is being preserved. That right was not preserved here. The, the agreement took the right away, the right to fees, except for a very, a very minimal amount. And I explained in the brief why that that minimum amount is just de minimis is about the best word to apply to it. Unless the court has other questions, I think we've set out both sides of the matter is pretty clearly in the briefs. Yeah, it's pretty clearly in the briefs. Why don't you give us your spin or your take on Fiala since both parties seem to be relying on it to some extent. In Fiala, the only difference between this case and Fiala is that in Fiala, apparently the arbitration clause was an integral part of the residency contract. It's a little bit unclear, but the plaintiff's lawyer there didn't say otherwise. So apparently that was part of the, of the residency agreement. In that case, the court allowed the matter to go to arbitration because to get the person, the resident into, into the home as a resident, the power of attorney holder had to sign, had to sign the arbitration agreement. It was a condition of admission to the home, whether it should have been or not. We don't know because nobody raised that issue. In our case, it's just not the same. We're the other part of the Fiala decision. And the court there was very clear. It divided it into two areas and said, no, when it's not a health care decision, and if it's not a health care decision, the holder of a health care power of attorney has no authority. Unless there are further questions that, that concludes our point, then we obviously ask further questions. I'm guessing that you think that the Tennessee case is completely irrelevant to our consideration. That, that would surely be my thought. I'm not sure exactly what the law is in Tennessee, but it's clearly not the Fiala law at all. And Fiala looked at it, I think as a broad way of saying, look, we understand there are some people that do this differently, but the majority of the states and, and Illinois are not going to follow that route. Basically the Owens case from Tennessee basically said somebody who has a power of attorney for health care has a complete power of attorney for everything. And that's just not the law in any place that I know that just was wrong. All right, Mr. Maxey. Thank you, your I will just pick up where you left off. Fiala, we believe that it controls. Yes, in that case, it was a condition of entry into the nursing home, but it also talked about the clause being integrated into the contract. And I think that's why the trial court judge Esrich allowed, you know, granted the motion to compel arbitration because here the arbitration clause was... Was it Esrich or Ehrlich? Ehrlich. I'm sorry. I'm sorry. I'm sorry. I apologize. And I believe that's probably why he, he ruled the way he did. He said, basically it's in the, it's mentioned in the contract between the resident and Symphony of Devastant. And then it's also in that mentioning that it's attached there too, as part of the arbitration agreement. And there's a full arbitration agreement attached to the residency agreement. And I believe that's the distinction and you separate agreement. It does say they've entered into a separate healthcare arbitration agreement in connection with the contract and expressly affirm a state that said healthcare arbitration agreement be incorporated into this document as those stated and contained herein. That's, that's why it was part and parcel of the residency agreement. But don't... Okay, but I'm sorry. Go ahead, Judge Craig. I defer to Justice Pachinski. So the primary agreement, the whole agreement for her to stay in the place and be cared for at the place says, oh, we're incorporating the arbitration thing, paper. But the arbitration paper itself says, this is optional. You don't have to sign this. So it was optional. You don't have to sign it. As long as you don't have to sign it, it's not a requirement to get into the there. Right? Yes, I agree with that. It's not a requirement because it even says as part of the arbitration agreement, you're not required to sign this. Yet the healthcare power of attorney did sign it as part of the process of bringing the resident into the nursing home. So how is it an integral part of the agreement if you're not required to sign it and it's not in the facility? Well, because it's incorporated by reference as being part of this resident agreement. That's my interpretation of that. And that's my interpretation of that Tennessee case, which the Fiala court sided with agreement that it cited that as one of the cases that it was looking to. And in that case, they interpreted the same language and said consent. This is... So you're saying that the large agreement to get into the place that says the arbitration agreement is necessary, trumps the actual arbitration agreement that says, oh, it's not necessary, which most courts in Illinois do not agree with. Is that just about summarizes what you're saying? Well, it's not a requirement to stay at the nursing home. You do not have to sign it. And at the time that the POI came to the facility, they were told they didn't have to sign it. They discussed... But they don't have to sign it to get in. You can still be a resident there. They could still stay there in the home, yes. So signed or not signed, it doesn't make any difference because you don't need it. You don't need it to be a resident there. You don't need it to be a resident, correct. The healthcare power of attorney, your argument, she had the authority to sign it. Their argument is she didn't have the authority to sign it. I'm just saying you didn't need it. Nobody needed it. It's not part of the agreement. There is no agreement by anybody that we're going to use arbitration. Well, paragraph G of the resident agreement says that the healthcare arbitration agreement is incorporated. Well, you just told me that the arbitration agreement that says on it, you do not have to sign this. It's not a condition of residency, trumps what it says in the residential agreement. So... I'm saying that... I'm sorry. It's true that you don't have to sign the arbitration agreement. It's not part... It's contingent on staying in the home. You don't have to sign it. However, it is part of the agreement. And if you sign it, then you're bound to it. She signed it as the PO, as the power of healthcare attorney, power of healthcare. She signed both the resident agreement and the arbitration agreement. So she had... She read exhibit... She read paragraph G, which incorporated expressly incorporated the arbitration agreement into the contract between the resident and symphony. And then she read the arbitration agreement and signed it. So therefore she bound the resident to the arbitration agreement because... These documents are not negotiable. These documents are all prepared by presumably lawyers for the symphony and other care facilities. Is that correct? Well, they're negotiable because at the time they could strike it out as the testimony of the... Well, I mean, was she sitting there with a lawyer reading her all the clauses and everything? No. Okay. So under some duress, under some strain, her mom's sick. She needs somebody to take care of her. Somebody hands her a bunch of papers to sign that say, oh, your mom can live here and we'll take care of her. And here, sign here. And these papers, you don't get to... I guess you could have said, well, wait, I'm going to go out and lobby and she signs them all. No lawyer present, all this legal mumbo jumbo. And you're telling me that because the residential agreement incorporates by reference, the arbitration paper, which on its face and pretty bold type says, oh, you don't have to sign this. It's not a condition of residency, that somehow it becomes a condition of residency. And I'm just wondering how that even... How that interpreted is that since it's incorporated under paragraph G and she signed both documents that they become binding upon the resident. That's how I've interpreted it. Is arbitration healthcare? Does it have anything to do with nurses, doctors, blood samples, getting shots, getting turned over if you have bed sores, getting your linens changed, help bathing. Does arbitration do any of that rebuttal? From the questions and answers, obviously the court is aware of the positions of both sides. I really have nothing to add to what's gone before, unless the court has some further questions, we ask that the matter be reversed and remanded. Okay. We will take the matter under advisement. Thank each of you, regulars in the sport of appellate proceedings for your briefs and your arguments today. And we'll be back to you forthwith. We are adjourned.